_____

BARBARA B.,

                          Plaintiff,

v.                                          3:18-CV-878 (ATB)

COMM'R OF SOC. SEC.,
                         Defendant.

_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON            PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.     KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

       Currently before the Court, is this Social Security action filed by Barbara B. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3). This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 6.)  The parties have each filed briefs (Dkt. Nos. 14 and 19)

addressing the administrative record of the proceedings before the Commissioner.  (Dkt. No. 9.)[1]

## I.    RELEVANT BACKGROUND

### A.    Procedural History

On January 22, 2013, Plaintiff applied for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"), alleging a disability onset date of January 26, 2011.  (T.

10, 108, 128-29, 224-31, 822.)  She subsequently amended her onset date to December 13,

2012.[2]  (T. 241, 822.)  Plaintiff was born in 1970, making her 42 years old as of the amended

alleged onset date and 48 years old on the date of the ALJ's May 2018 decision. At the initial

level, Plaintiff alleged disability due to fibromyalgia, depression, anxiety, posttraumatic stress

disorder, asthma, back and neck pain, a traumatic brain injury, post-concussive disorder,

degenerative disc disease, osteoarthritis, joint dysfunction, sciatica, and gastroesophageal reflux

disease.

Plaintiff's applications were initially denied on June 3, 2013, after which she requested a

hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at two hearings before

ALJ Elizabeth Koennecke on September 24, 2014, and February 4, 2015.  (T. 31-61, 940-70.)

On February 10, 2015, ALJ Koennecke issued a written decision finding that Plaintiff was not

disabled under the Social Security Act.  (T. 7-28, 860-81.)  On July 14, 2016, the Appeals

Council denied Plaintiff's request for review.  (T. 1-6, 882-87.)  Plaintiff challenged the denial of

---

[1] Citations to the Administrative Transcript, found at Dkt. No. 9, will be referenced as "T." and
the Bates-stamped page numbers as set forth therein will be used rather than the page numbers
assigned by the Court's CM/ECF electronic filing system.

[2] The record reflects Plaintiff had a previous application for disability insurance benefits filed in
April 2011 alleging disability beginning January 26, 2011, with an unfavorable decision by ALJ
Elizabeth Koennecke dated December 12, 2012.  (T. 62-107, 891, n. 1.)

her claims for disability in the United States District Court for the Northern District of New York. On July 17, 2017, Magistrate Judge William B. Carter ordered remand for further administrative proceedings, pursuant to Sentence Four of 42 U.S.C. § 405(g). (T. 888-907.) The Appeals Council directed that, on remand, the ALJ should offer Plaintiff the opportunity for a hearing, address the additional evidence submitted, take any further action needed to complete the administrative record, and issue a new decision. (T. 910-15.)

Plaintiff appeared at a subsequent administrative hearing before ALJ Koennecke on March 28, 2018, at which a vocational expert ("VE") also testified. (T. 847-59.) On May 21, 2018, ALJ Koennecke issued a partially favorable written decision finding that Plaintiff was not disabled prior to June 6, 2017, but was disabled from that date through the date of the ALJ's decision. (T. 817-46.) Plaintiff initiated this action in the United States District Court for the Northern District of New York on July 27, 2018. (Dkt. No. 1.)

**B.     ALJ Koennecke's May 2018 Decision**

In her decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016. (T. 825.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 13, 2012, the amended onset date. (*Id.*) The ALJ further found that, since the alleged onset date of disability, Plaintiff had severe impairments including degenerative disc disease of the cervical and lumbar spine, trochanteric bursitis, fibromyalgia, obesity, and a mental impairment. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 since the alleged onset date. (T. 826-27.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 12.04 (depressive, bipolar and

3

related disorders). (*Id.*) The ALJ found that, prior to June 6, 2017, the date Plaintiff became disabled, she had the RFC

> to lift any weight up to three hours per day, frequently lift and/or carry less than 10 pounds, sit for six hours out of an eight-hour workday, and stand and/or walk for two hours out of an eight-hour workday. She retained the ability to understand and follow simple directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; and handle simple, repetitive work-related stress in that she can make occasional decisions directly related to the performance of simple tasks involving goal-oriented work rather than work involving a production rate pace.
>
> Beginning on June 6, 2017, [she] has the [RFC] to lift any weight up to three hours per day, frequently lift and/or carry less than 10 pounds, sit for three hours out of an eight-hour workday, and stand and/or walk for less than two hours out of an eight-hour workday with the use of a cane. She retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; and handle simple, repetitive work-related stress in that she can make occasional decisions directly related to the performance of simple tasks involving goal-oriented work rather than work involving a production rate pace.

(T. 827-28.) The ALJ further found that Plaintiff had been unable to perform any past relevant work since December 13, 2012,[3] but that there were jobs existing in significant numbers in the national economy that she could perform prior to June 6, 2017. (T. 834.) The ALJ therefore determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2016, the date last insured for DIB. (*Id.*)

---

[3] Plaintiff obtained an associate degree in medical assisting, and previously worked as a licensed practical nurse, medical assistant, and data entry clerk.

The ALJ found that, beginning on June 6, 2017, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 352-53.) The ALJ concluded that Plaintiff became disabled on June 6, 2017, and that her disability was expected to last twelve months past the onset date. (T. 836.)

### C.     Issues in Contention

In her brief, Plaintiff argues that the ALJ's choice of June 6, 2017 as the disability onset date was arbitrary and capricious. (Dkt. No. 14, at 20-22.) Plaintiff also contends that the ALJ failed to properly assess her fibromyalgia (*Id*. at 22-23), and that the ALJ erred in her evaluation of the opinions of treating rheumatologist, Thomas Oven, M.D., and treating physician Darlene Denzien, D.O. (*Id*. at 23-25.) Plaintiff also contends that the ALJ's RFC findings and her Step Five determination that Plaintiff was not disabled prior to June 6, 2017, were not supported by substantial evidence. (*Id*. at 25-29.)

Defendant argues that the ALJ's RFC determination is supported by substantial evidence because the ALJ properly evaluated the medical opinion and other evidence of record, including the evidence relating to Plaintiff's fibromyalgia. (Dkt. No. 19, at 7-18.) Defendant contends that the ALJ's finding that Plaintiff became disabled as of June 6, 2017, but was not disabled before that date, is supported by substantial evidence. (*Id*. at 18-21.) For the reasons stated below, the Court agrees with many of Plaintiff's arguments and orders a remand of this case.

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Substantial Evidence Does Not Support the ALJ's Choice of the Disability Onset Date of June 6, 2017

#### 1.   Applicable Law

"'[I]t is essential that the onset date be correctly established and supported by the evidence.'" *Hamilton v. Astrue*, 11-CV-954 (GLS), 2012 WL 5303338, at *2 (N.D.N.Y. Oct. 25,

2012) (quoting Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *1 (1983)).[4]  In

*Hamilton*, the Court stated that, where

> the alleged disability is nontraumatic in origin, the ALJ must
> consider the following relevant factors: (1) the individual's
> allegation of onset; (2) her work history; and (3) the medical and
> other evidence concerning impairment severity.  The individual's
> allegation is "[t]he starting point" from which the ALJ determines
> the onset date; the alleged onset date "or the date of work stoppage
> is significant . . . only if it is consistent with the severity of the
> condition(s) shown by the medical evidence."  The medical
> evidence, however, is the "primary element in the onset
> determination."  While the date alleged by the claimant should be
> used if it is consistent with all the record evidence, "[w]hen the
> medical or work evidence is not consistent with the allegation,
> additional development may be needed to reconcile the
> discrepancy."  Ultimately, the date selected by the ALJ "can never
> be inconsistent with the medical evidence of record."  Slowly
> progressive impairments are such that "it is sometimes impossible
> to obtain medical evidence establishing the precise date an
> impairment became disabling."  If the ALJ reasonably questions the
> alleged onset date, "the best practice may be to solicit the views of
> a medical expert."

*Hamilton*, 2012 WL 5303338, at *2 (quoting SSR 83-20; *Monette v. Astrue,* 269 F. App'x 109,

112 (2d Cir. 2008) (internal citations omitted).  "'Where the ALJ determines that the date of

onset is other than what the claimant alleges, the ALJ has an affirmative obligation to 'adduce

substantial evidence to support his [finding].'"  *Corbett v. Comm'r of Soc. Sec.*, 08-CV-1248

(TJM), 2009 WL 5216954, at *13 (N.D.N.Y. Dec. 30, 2009) (quoting *Moses v. Sullivan*, 91-CV-

6980, 1993 WL 26766, at *4 (S.D.N.Y. Jan.19, 1993)).

There is a difference between analyzing medical records to determine what the weight of

the evidence supports and interpreting raw medical data that would require the expertise of a

physician or other trained medical source; the ALJ is precluded from doing only the latter. *See*

---

[4] The Court notes that SSR 83-20 was rescinded and replaced October 2, 2018, following ALJ
Koennecke's May 2018 decision.  1983 WL 31249.

*Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendations adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016)) (noting that, while it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record).

Additionally, the ALJ is required to provide a rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (citation omitted)); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (citation omitted).

### 2. Analysis

The ALJ found that Plaintiff's allegations regarding her symptoms and limitations "are more consistent with the evidence" beginning on June 6, 2017. (T. 833.) On that date, Plaintiff "complained of a significant increase in her neck pain while at physical therapy," describing her pain as constant and unbearable, which the ALJ concluded indicated a worsening of her condition. (T. 833, 1045.) The ALJ also referenced an August 2017 cervical spine MRI that reportedly showed progression of Plaintiff's osteoarthritis compared to a prior MRI; a September 2017 EMG that revealed a mild right chronic C6-C7 radiculopathy; and a December 2017 lumbar spine MRI that reportedly documented disc herniation at L4-L5, with osteoarthritis of the lumbar spine. (T. 833-34, 1279, 1296-99.) The ALJ observed that Plaintiff had had a few

months of worsening right hip pain in August 2017, and received repeat injections after a return

of hip pain.  The ALJ also noted that Plaintiff had neck injections in January 2018, at which time

she appeared uncomfortable and was not able to ambulate without the use of a cane.  (T. 834,

1157, 1286-95, 1339.)

Plaintiff argues that the ALJ's choice of June 6, 2017, as Plaintiff's disability onset date

is arbitrary and capricious.  (Dkt. No. 14, at 20-22.)  Plaintiff contends that the June 6 treatment

note referenced by the ALJ actually indicates a significant increase in neck pain three months

earlier.  (*Id*. at 21; T. 833, 1045.)  Plaintiff also notes that other records indicated worsening

symptoms of cervical radiculopathy, of non-traumatic onset, three months prior and, otherwise

suggested the onset of Plaintiff's disability well before June 6, 2017.  (*Id*.; T. 1049, 1157, 1382,

1384.)  Plaintiff maintains there was no acute deterioration of Plaintiff's condition on June 6, but,

rather, a worsening of her condition over the course of years with prior evidence of significant

cervical pain and radiculopathy.  (*Id*. at 21-22; T. 834, 1157, 1277, 1296.)

The ALJ's analysis, which was not supported by medical opinion evidence, did not

provide substantial evidence to warrant the finding that Plaintiff's disability began no earlier than

June 6, 2017.  The ALJ's cited some medical evidence to explain her choice of this onset date,

but did not support her conclusions about when Plaintiff's physical abilities changed to the extent

that she became disabled.  For example, the ALJ explicitly pointed to Plaintiff's complaint of a

significant increase in her neck pain on the selected onset date, without any explanation or

citation to any medical source indicating how this increase in pain affected Plaintiff's

functioning.  (T. 833, 1045.)  Further, the ALJ does not adequately account for the considerable

medical opinion and other evidence indicating that Plaintiff's symptoms and limitations

worsened well before June 6, 2017.  The ALJ's citation to a sampling of data points from the

medical evidence, without the benefit of the testimony of a medical expert to substantiate the onset date, crossed the line between analyzing the evidence and interpreting it. *See Hamilton*, 2012 WL 5303338, at *2 (quoting SSR 83-20); *Hanson*, 2016 WL 3960486, at *9.

The longitudinal nature of Plaintiff's neck pain and other impairments undermines the ALJ's analysis regarding the disability onset date. For example, the record indicates that Plaintiff was involved in a motor vehicle accident on approximately January 17, 2011, (with a significant increase in pain on January 26, 2011), and that Plaintiff continued with low back and neck pain following this incident. (T. 375-76, 417, 421, 423, 499-502.) In August 2011, Plaintiff's primary care provider reported low back and cervical pain secondary to a motor vehicle accident, with a history of osteoarthritis and restless leg syndrome. (T. 408.) In December 2012, Plaintiff reported a slip-and-fall with resulting back pain. (T. 394.) In May 2013, Plaintiff reportedly fell over toys and hurt her right shoulder, right hip, lower back, and both her knees. (T. 589.) In June 2013, Plaintiff reported another fall and, between 2013 and 2018, continued to experience chronic back pain as well as neck, right shoulder, knee, and hip pain. (T. 609, 613, 632, 645, 629, 614-25, 77, 799-804, 1319, 1324, 1328, 1334-35.)

In choosing an onset date, the ALJ failed to address portions of treating source opinions that suggested earlier onset dates. Dr. Denzien opined that Plaintiff's conditions (including traumatic brain injury, low back pain, and chronic fibromyalgia) had caused various limitations since January 2011.[5] Dr. Oven with Elizabeth Schlitz Hull, FNP, observed that Plaintiff's

---

[5] As noted above, Plaintiff's alleged onset date was originally January 26, 2011, which was subsequently amended to December 13, 2012--the day after the previous unfavorable decision from ALJ Koennecke, which bars a finding of disability before the date of decision. (T. 10, 62-108, 241, 822, 916-39.) Although the relevant time period for this Court's analysis starts from the amended onset date, medical evidence prior to that date is cited for the purpose of documenting the longitudinal record and how it may indicate that Plaintiff's condition substantially worsened at a point after the amended onset date, but well before June 6, 2017.

conditions (including fibromyalgia and trochanteric bursitis) had been present since August 2011. (T. 677, 747.) Although the ALJ discussed these opinions in analyzing Plaintiff's RFC, her decision does not discuss the onset date indicated by the treating source opinions, or what, if any weight, was given to these opinions. (T. 827-34.)

Without further explanation from the ALJ documenting a logical bridge between the evidence and her choice of an onset date, meaningful judicial review is not possible. For the reasons discussed above, as well as those discussed below regarding Plaintiff's impairments and RFC, the Court is unable to conclude that substantial evidence supports the disability onset date of June 6, 2017. *See Hickman*, 728 F. Supp. 2d at 173. The Court therefore finds that remand is required for further consideration of Plaintiff's disability onset date, particularly whether Plaintiff was disabled at some point prior to June 6, 2017.[6] On remand, the Commissioner should consider using a medical expert to provide guidance with respect to an onset date.

**B.  Substantial Evidence Does Not Support the ALJ's Analysis of Plaintiff's Fibromyalgia or her RFC Findings With Respect to the Period Before June 6, 2017.**

This Court has determined that this case must be remanded for further consideration of the disability onset date. In further support of that determination, and in order to provide additional guidance to the Commissioner on remand, the Court will address Plaintiff's arguments regarding errors in the ALJ's review of the medical opinion evidence, her RFC analysis, and her consideration of Plaintiff's fibromyalgia.

---

[6] The ALJ's choice of onset date would preclude Plaintiff from receiving Title II DIB benefits for the period before her application was filed, because the onset date post-dates her date last insured by approximately six months. (T. 108, 118.)

### 1. Applicable Law

#### a. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

#### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 2.  Relevant Treating Source Opinions

In August 2014, treating providers, Dr. Oven and FNP Schlitz Hull, stated that Plaintiff's fibromyalgia and trochanteric bursitis would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 676.) They opined that Plaintiff had the following limitations, present since August 2011:  she would be off-task more than 20 percent, but less than

33 percent of the workday and absent more than four days per month; she could sit for four to six hours out of an eight-hour day and stand/walk for one hour; and she could lift over 10 pounds for up to three hours per day. (T. 676-77.) The ALJ afforded some weight to the lifting, carrying, and sitting limitations found by Dr. Oven and FNP Schlitz Hull, but stated "the limitations associated with standing, walking, being off task, being absent from work, and alternating between positions is given limited weight because FNP Hull evaluated her every three months and Dr. Oven treated her every six months." (T. 832.) The ALJ concluded that "[s]uch infrequent treatment does not support such significant functional limitations." (*Id*.)

In November 2014, Dr. Denzien found that Plaintiff's traumatic brain injury, low back pain, and chronic fibromyalgia would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 746.) Dr. Denzien opined that Plaintiff had the following restrictions, which had been present since January 2011: she would be off-task more than 33 percent of the day and absent more than four days per month; she could sit for four hours out of an eight-hour workday, would need to change positions every 15 minutes, and could stand/walk for one hour; and she should not lift any weight at all. (T. 746-47.) In a November 2014 treatment note, Dr. Denzien stated:

> Based on the history, review of chart and medical records, the patient is fully disabled permanently from meaningful employment. She would be unable to maintain any meaningful work. Her collective disabilities, traumatic brain injury and back injury would make it impossible for her to be fully attendant at any job. Her brain injury makes it impossible for her to put her previous education to meaningful[] use because of issues of poor concentration and poor memory.

(T. 772.)

The ALJ gave limited weight to Dr. Denzien's assessments because they were not fully supported by her own treatment notes. (T. 832.) The ALJ noted that Dr. Denzien's conclusions

were based in part on a traumatic brain injury, but concluded that the record did not document a severe traumatic brain injury. The ALJ also observed that treatment notes from Dr. Denzien's office did not document evidence of attention and concentration deficits. (*Id*.) The ALJ further cited treatment notes indicating the absence of dizziness, migraine headaches, syncope, weakness and memory loss, as well as a lack of clinical findings associated with Plaintiff's lumbar or cervical disorder. (T. 454-55, 832.) The ALJ concluded that objective evidence in the record did not support Dr. Denzien's assessment, noting that an EMG/nerve conduction study was negative for lumbar radiculopathy.

In April 2015, treating provider Christopher Yanusas, Ph.D., assessed Plaintiff's concussion/post-concussion syndrome with continuing fatigue, anxiety/depression, and concentration/memory problems. (T. 814.) Dr. Yanusas found medium limitations in maintaining attention and concentration and marked limitations in performing activities within a schedule, maintaining regular attendance and/or being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychological-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id*.) He indicated Plaintiff would be off-task more than 33 percent of the workday and absent three or more days per month, with her restrictions being present since December 2011. (T. 815-16.) The ALJ gave little weight to the assessment by Dr. Yanusas, "who reported [Plaintiff] has limitations related to a motor vehicle accident despite not having ever seen [her] until approximately one year thereafter." (T. 833.) The ALJ noted that Dr. Yanusas had detailed that Plaintiff's "stress over her daughter and caring for her grandchildren is really what causes any limitations, which supports a conclusion that [she] has no significant post-concussion issues related to her motor vehicle accident." (T. 833, 1217-56.)

In February 2018, Dr. Denzien submitted an addendum to her November 2014 assessment stating that Plaintiff's condition had worsened and her limitations were more severe. (T. 1296.) Dr. Denzien noted lumbar pain with a December 2017 MRI confirming disc herniation at L4-L5, with osteoarthritis of the lumbar spine; an August 2017 cervical spine MRI showing progression of osteoarthritis compared with an August 2010 MRI; and celiac disease with malabsorption requiring infusions for anemia. (*Id.*) The ALJ gave this assessment limited weight, "as the record is supportive of a showing of some degree of worsening, although Dr. Denzien's report cannot be given greater weight" because the ALJ's request for an explanation for the basis of this assessment was not completed by Dr. Denzien. (T. 834.) The ALJ also noted that a May 2017 x-ray of the cervical spine did not indicate significant worsening of Plaintiff's condition. (T. 834, 1160.)

In March 2018, Dr. Yanusas opined that Plaintiff's condition and limitations were about the same. (T. 1343.) The ALJ found that this opinion was generally consistent with earlier indications that Plaintiff's issues were more related to psychiatric conditions, rather than a head injury. The ALJ concluded that Plaintiff was limited to unskilled work with no production pace based on Dr. Yanusas' reports. (T. 834.) The ALJ gave no weight to any conclusory statements regarding Plaintiff being disabled, because these were conclusions reserved to the Commissioner. (*Id.*)

### 3. Analysis

#### a. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff argues the ALJ's evaluation of the opinions from treating rheumatologist, Dr. Oven, and treating primary care physician, Dr. Denzien, reflects the same error that caused Magistrate Judge Carter's prior remand in this case. (Dkt. No. 14, at 23-25.) Plaintiff also

contends the RFC determination is not supported by substantial evidence because she cannot stand/walk two hours per day, the ALJ failed to include limitations to work pace and/or attendance, and the ALJ failed to include Plaintiff's need to frequently change positions. (*Id.* at 25-27.) The Court finds these arguments persuasive for the following reasons.

Multiple treating physicians opined that, as a result of Plaintiff's symptoms from fibromyalgia, bursitis, traumatic brain injury, and/or post-concussion syndrome, she would be off-task greater than 20% to 33% of the workday, would have three or four or more absences per month, and could only stand/walk for one hour per eight-hour workday. The ALJ did not adopt these limitations in his RFC findings for the period before June 6, 2017, but cited no medical opinion evidence that contradicted the opinions of Plaintiff's treating physicians with respect to that time period. "[W]hen a medical opinion stands uncontradicted, '[a] circumstantial critique by nonphysicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome' it." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)). *See also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.'").

The ALJ discounted Dr. Oven's August 2014 opinion (T. 676-77) because FNP Schlitz Hull evaluated Plaintiff every three months and Dr. Oven treated her every six months, stating that such infrequent treatment did not support such significant functional limitations. (T. 832.) This analysis was similar to that employed by the ALJ in her February 2015 opinion, which analysis Magistrate Judge Carter rejected because it was belied by the record. (*Id.* at 23-24; T. 832, 900-01.) As Judge Carter noted "Plaintiff began treatment with Dr. Oven's practice in August of 2010 and consistently received treatment approximately every three months from August 2010 through August 2014" and "was examined by a provider with Dr. Oven's office 18 times in three years." (T. 900-01.) Nonetheless, the ALJ again afforded limited weight to Dr. Oven and Ms. Schlitz Hull's opinions about Plaintiff's limitations with standing, walking, being off task, being absent from work, and alternating between positions.

The Court finds the ALJ's conclusion regarding Dr. Oven's opinions is not supported by substantial evidence because it ignored the established, specialized treating relationship between these providers and Plaintiff, as well as Judge Carter's previous ruling that the ALJ erred in evaluating this treating relationship. Furthermore, subsequent treatment notes before ALJ Koennecke on remand indicate that Plaintiff continued treating with Dr. Oven at Regional Rheumatology Associates between November 2014 and August 2017, with approximately six examinations by Dr. Oven or someone in his practice during that time period. (T. 1157-86.)

The Court similarly finds that the ALJ's analysis of Dr. Denzien's opinion repeats an error previously identified found by Judge Carter. (Dkt. No. 14, at 25; T. 825-832, 901-02.) The ALJ also noted that Dr. Denzien's conclusions were based in part on a traumatic brain injury, although the ALJ found that the record did not document a severe traumatic brain injury. (T. 832.) Judge Carter observed that, in the ALJ's previous decision, she discounted the opinions of

Dr. Oven and Dr. Denzien because their opinions were based on impairments which the ALJ deemed non-severe, including bursitis or brain injury. However, Judge Carter found that the doctors' opinions were actually based on Plaintiff's fibromyalgia and trochanteric bursitis, or a variety of medical diagnoses. (T. 901.) He concluded that the ALJ should have taken non-severe impairments into consideration when formulating the RFC. Because Plaintiff's treating sources found limitations based on their treatment of Plaintiff's collective impairments, Judge Carter ruled that the ALJ erred by summarily discounting the entirety of the opinions because she classified one particular impairment to be non-severe. (T. 901-02.)

The ALJ also gave limited weight to Dr. Denzien's assessments because they were not fully supported by her own treatment notes, which did not, for example, document evidence of attention and concentration deficits. (T. 454-55, 832.) However, because treating physicians appropriately focus on a patient's diagnosis and treatment, it is unreasonable for the ALJ to expect that Plaintiff's treating physicians would document and support detailed functional assessments in their treatment notes. *See, e.g., Oakley v. Colvin*, No. 3:13-CV-679 (GLS/ESH), 2015 WL 1097388, at *11 n. 22 (N.D.N.Y. Mar. 11, 2015) ("Absent a request for forensic opinions, treating medical sources' clinical notes focus on diagnoses and treatment modalities."); *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) ("it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits.").

Further, the Court is troubled by the ALJ's statement that "Dr. Denzien noted [Plaintiff] was following with all of her various specialists for all her various problems, which suggests that Dr. Denzien is not personally providing [her] with treatment for the majority of her conditions." (T. 455, 751, 772, 832.) This characterization ignores the longstanding relationship Dr. Denzien

has with Plaintiff as her primary care physician. Dr. Denzien and others at Lourdes Center for Family Health have treated Plaintiff since at least 2010, with referrals for specialized treatment and various procedures. (T. 38, 75, 387, 366-449, 474-76, 604-50, 643, 651, 678, 751, 767-97, 1300-38, 1353-1419.) The Court is not satisfied that the ALJ properly assessed the frequency, length, nature, and extent of this treating relationship in considering this medical source opinion.

Given the ALJ's errors in considering the opinions from Dr. Oven and Dr. Denzien, the ALJ's RFC determination and Step Five analysis is tainted and not supported by substantial evidence. (*See* Dkt. No. 14, at 25-27.) The ALJ's RFC findings and her hypothetical to the VE did not include significant limitations found by these treating sources relating to standing, walking, the need to change positions, and work pace and/or attendance. (T. 676-77, 746-47, 855-56.) For example, multiple treating doctors opined that Plaintiff would have more than three or four unexcused absences per month, which the VE testified would not be tolerated by employers in the careers identified as consistent with the ALJ's RFC hypothetical. (T. 858.)

### b. The ALJ's Evaluation of Plaintiff's Fibromyalgia

The Court cannot find, on the current record, that the ALJ's analysis of Plaintiff's fibromyalgia in her May 2018 decision is supported by substantial evidence. (T. 830.) In reviewing the ALJ's February 2015 decision, Magistrate Judge Carter found that (1) the ALJ's conclusion, based on her own interpretation of the medical evidence, that Plaintiff's limitations could not be due to her fibromyalgia because of her normal physical examinations, is a fundamental misunderstanding of fibromyalgia and (2) that a lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to confirm its diagnosis. (T. 902 (citing, *inter alia*, *Campbell v. Colvin*, No. 5:13-CV-451 (GLS/ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015)).) In her May 2018 decision, the ALJ stated

According to the evidence in record, [Plaintiff] had a history of fibromyalgia, but rheumatology records from January 2013 showed no marked swelling of any peripheral joints (Exhibit B5F, page 3). I am aware that fibromyalgia is a diagnosis rendered without any objective evidence. It is a subjective condition and this claimant, just as every other claimant who alleges this impairment, subjectively reports disabling pain with disabling functional limitations. However, the Agency has not directed that the diagnosis alone equals a finding of disability, rather it is up to the undersigned to determine how severe her fibromyalgia is. Because it is a condition that results in complaints of widespread pain affecting function, it necessarily affects findings reported on examination, such as reduced strength due to pain, reduced range of motion due to pain, limited movement due to pain, [and] antalgic gait muscle bulk versus muscle wasting. Therefore, there is objective evidence that can inform the undersigned and fulfill the requirement to determine the severity of her fibromyalgia. This is consistent with the Agency's directives for evaluating fibromyalgia. Otherwise, if the undersigned is precluded from evaluating any objective evidence, the diagnosis alone does equate to a finding of disability. This conclusion would be improper, as the record does not document fibromyalgia flares or the extensive limitations associated therewith that [Plaintiff] has alleged.

(T. 456, 830.)

To be sure, Plaintiff's other pain-causing impairments (including degenerative disc disease of the cervical and lumbar spine, as well as trochanteric bursitis) complicate the assessment of her fibromyalgia and related symptoms. (T. 108-09, 118-19, 825.) However, the ALJ's reliance on a lack of marked swelling of any peripheral joints documented in rheumatology records from January 2013 appears to again represent a fundamental misunderstanding of fibromyalgia and a failure to properly review or discuss positive clinical findings throughout the record which could be attributed to fibromyalgia in conjunction with Plaintiff's other impairments. (T. 830, 902.)

For example, Plaintiff was assessed with chronic myalgias secondary to questionable fibromyalgia with a history of osteoarthritis in September 2010 and had positive trigger points

with decreased range of motion of the neck and upper arm on examination. (T. 428.) In late 2010 through 2012, Plaintiff had pain, tenderness (variously characterized as mild to exquisite), or tender trigger points on examinations and was variously assessed with probable fibromyalgia syndrome, diffuse arthromyalgias with multiple soft tissue complaints consistent with fibromyalgia, and fibromyalgia syndrome with a large component of myofascial pain. (T. 458-76.) In January 2013 (within the same treatment note cited by the ALJ for a lack of marked swelling of any peripheral joints), Dr. Oven noted Plaintiff complained of tenderness on palpation of various areas of the body, but he could see no active synovitis and her gait was within normal limits that day. (T. 456-57.) Subsequently, in April 2013, FNP Schlitz Hull noted diffuse tender trigger points on examination. (T. 455.) In July 2013, Plaintiff was noted to be ambulating with a cane and her right knee showed soft tissue swelling with some pain and tenderness along the lateral and medial aspect of the patella. (T. 630.) In rheumatology records from March 2015 to August 2017, Plaintiff had tenderness in various areas. (T. 1157-85.)

Although the ALJ found Plaintiff's fibromyalgia to be a severe impairment, her most recent analysis of Plaintiff's fibromyalgia is again deficient. (T. 825, 830.) Neither SSR 12-2p, discussing the evaluation of fibromyalgia, nor Judge Carter's decision suggests that the ALJ is precluded from evaluating objective evidence or finding that the diagnosis of fibromyalgia alone does not equate to a finding of disability. (T. 830.) However, the ALJ "must consider all evidence in the record" in assessing Plaintiff's impairments, symptoms, and RFC. *Ryan v. Astrue*, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009) (citation omitted); *Armstead ex. rel. Villanueva v. Astrue*, 04-CV-0503 (NAM/RFT), 2008 WL 4517813, at *18 (N.D.N.Y., Sept. 30, 2008)). Although the ALJ is entitled to resolve conflicts in that evidence, she "cannot 'cherry pick' only the evidence from medical sources that support a particular conclusion and ignore

contrary evidence." *Walsh v. Colvin*, 13-CV-0603 (GTS/ATB), 2014 WL 4966142, at *9

(N.D.N.Y. Sept. 30, 2014) (citing, *inter alia*, *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

Judge Carter stated that it appeared from the ALJ's "terse analysis of the record" in her

February 2015 decision that she improperly rejected the treating source opinions based on a

perceived lack of objective evidence supporting Plaintiff's diagnosis and limitations due to her

fibromyalgia. (T. 903.) This Court is similarly unconvinced that the ALJ properly reviewed the

evidence (both medical and opinion) regarding Plaintiff's fibromyalgia in her May 2018

decision, because the ALJ cherry-picked the evidence in choosing to highlight the January 2013

treatment note without discussing other evidence of positive findings.

In sum, the Court finds that the ALJ's analysis of the medical opinion evidence, including

that related to Plaintiff's fibromyalgia, and her RFC findings are not supported by substantial

evidence. Remand is required on these additional grounds. On remand, the ALJ should fairly

review the totality of the medical evidence in determining the weight to be given to the opinions

of Plaintiff's treating physicians and properly evaluate Plaintiff's impairments and related

symptoms to determine an RFC supported by substantial evidence.[7]

### C.     The Nature of Remand

"When there are gaps in the administrative record or the ALJ has applied an improper

legal standard . . . remand to the Secretary for further development of the evidence" is generally

appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). On remand, the ALJ should

---

[7] ALJ Koennecke has now reviewed Plaintiff's disability claims a total of three times. Although "whether to assign a new ALJ on remand is generally a determination for the Commissioner," the Commissioner "should consider in [his] discretion whether the case warrants a 'fresh look' by a new ALJ." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 300-01 (W.D.N.Y. 2006) (citing *Nunez v. Barnhart*, 01-CV-5714, 2002 WL 31010291 (E.D.N.Y. Sept. 9, 2002); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998)).

address the errors identified above in considering whether Plaintiff was disabled during any of the relevant time period prior to June 6, 2017.[8]  Because remand is necessary to address the issues identified above, the Court declines to reach specific findings on Plaintiff's other arguments.  (Dkt. No. 14, at 27-29.)  On remand, the Commissioner, perhaps with the input of a medical expert, may be able to support a determination that Plaintiff was not disabled during some or all of the earlier, relevant time period.  Thus, this Court cannot conclude that substantial evidence on the record as a whole indicates that the Plaintiff was disabled prior to the ALJ's chosen onset date and I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**ACCORDINGLY**, it is

**ORDERED** that the decision of the Commissioner as to the period between December 13, 2012, and June 5, 2017, is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the opinions of the treating physicians and other medical and non-medical evidence, Plaintiff's RFC, and whether and when she became disabled during that time period, and other further proceedings, consistent with this Report.

Dated:  October 28, 2019

Andrew T. Baxter
U.S. Magistrate Judge

---

[8] As discussed above, the ALJ's errors in the evaluation of the medical opinion and other evidence infected the ALJ's RFC findings, undermined the opinion of the VE that Plaintiff could perform work in the national economy, and tainted the ultimate decision that Plaintiff was not disabled prior to June 6, 2017.